UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR 21 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Iris D. Thomas )
)
)
Plaintiff )
)
vs. )
)
)
)
)
THE COUNTY OF COOK )
a body politic and corporate, d/b/a JOHN H. )
STROGER, Jr. HOSPITAL OF COOK COUNTY )

08CV2408
JUDGE KENDALL
MAG. JUDGE VALDEZ

## COMPLAINT

NOW COMES the Plaintiff, IRIS D. THOMAS, by and through her attorney YAO O. DINIZULU of DINIZULU LAW GROUP, LTD. who hereby complains against Defendant JOHN DOE as follows:

### GENERAL ALLEGATIONS

1. Plaintiff, IRIS D. THOMAS, is an individual, residing at 6834 S. Constance Ave, City of Chicago, County of Cook, State of Illinois, 60649.

2. Defendant, THE COUNTY OF COOK a body politic and corporate, d/b/a JOHN H. STROGER, Jr. HOSPITAL OF COOK COUNTY, is a public entity and resides at 1901 W. Harrison St., City of Chicago, County of Cook, State of Illinois, 60612.

3. IRIS D. THOMAS was hired by Defendant on November 23, 1998 as a Registered Nurse.

4. Ms. Iris D. Thomas worked as a Nurse Manager in the Ambulatory Unit for the Defendant for seven years.

5. Barbara Fischer was employed by the defendant as the Nursing Director for the Ambulatory Unit and as such was an agent of the Defendant.

6. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 USC §§ 20003 et seq, based on an unlawful employment practice by Defendant. Jurisdiction of this court is invoked pursuant to § 706(f) of Title VII 42 U.S.C.A. § 20003-5(f).

7. Plaintiff has complied with all conditions precedent to jurisdiction under 42 U.S.C.A. §§ 2000e-5. Specifically, a charge of employment discrimination was filed with the Equal Employment Opportunity Commission within 180 days of the unlawful employment practice. Notice of a Right to Sue was received. This complaint was filed within 90 days of receipt of the Notice.

8. The unlawful employment practices alleged in this complaint were committed in the Eastern Division of the Northern District of the State of Illinois.

9. Ms. Iris D. Thomas is a 75 year old African American woman.

10. Ms. Iris D. Thomas is a registered nurse of 32 years.

11. Ms. Iris D. Thomas was earning in excess of $80,000 working for the Defendant at the time she was terminated.

12. Ms. Iris D. Thomas was a Nurse Manager under the Defendant's employ for 7 years.

13. As the Nurse Coordinator in the Ambulatory Unit, Plaintiff managed four nurses, was responsible for all clinical operations of the health center including but not limited to the budget, and actively worked to develop referral relationships with other medical service providers and social service agencies in the community served by the hospital.

14. The Plaintiff began working for the defendant in 1998.

15. During Iris D. Thomas' employment with the Defendant, she received performance reviews in the 90th percentile, had no attendance problems and aided in the implementation of a new computer system for her unit.

16. At the time Ms. Iris D. Thomas was hired, her supervisor was Shirley Bomar-Cole, a very experienced African American woman, who had been working for the Defendant for approximately 20 years.

17. The Defendant suddenly suggested that Plaintiff's direct supervisor Shirley Bomar-Cole, find a new job. The defendant replaced Bomar-Cole with Barbara Fischer, a less experienced Caucasian woman.

18. Approximately six months after Bomar-Cole, the old Nursing Director, was replaced by Barbara Fischer, the new Director of the Ambulatory Unit, Fischer suggested that an additional nursing coordinator be brought in to assist Ms. Iris D. Thomas in managing her current staff of four nurses.

19. Ms. Iris D. Thomas informs Fischer, the Defendant Nursing director, that she cannot create a new position in the Ambulatory Unit for a non-county employee.

20. Upon information and belief, the Defendant Nursing Director attempted to create a position specifically for Chris Recker, a non-county employee by opening a position for a consultant in the Ambulatory Unit.

21. On January 26, 2004, the Defendant Nursing Director hired Chris Recker, a woman in her late 40s as a consultant.

22. Upon information and belief, The Defendant Nursing Director only informed Recker about the position and did not post or advertise the position to anyone else.

23. Ms. Iris D. Thomas informed the Defendant Nursing Director that she had to advertise the job position pursuant to the County's policy at the time, which was to post openings for positions for those within the organization and promote from within.

24. Under County policy at the time, Fischer would not have been able to hire Recker as a part of the Ambulatory Unit unless she brought her on as a consultant because Recker was an outside employee.

25. Approximately three months, after Recker, the consultant, was hired the Defendant Nursing Director listed Iris D. Thomas' position, Nurse Manager as vacant.

26. Upon information and belief the Defendant Nurse Director hoped to receive little or no applications for the Nurse Manager Position once posted, so that she could promote Recker, the consultant to the position.

27. The Defendant Nursing Director, posted the vacancy for Nursing Manager without consulting Ms. Iris D. Thomas, the Nurse Manager at that time.

28. Ms. Iris D. Thomas discovers that her job has been posted as vacant after co-workers approach her and ask her if she is retiring.

29. Fischer and Recker are out of town on a continuing education retreat when Plaintiff discovers her position is posted as vacant. As a manager Plaintiff should have been at the continuing education retreat with Fisher and Recker but Fischer and Recker did not include her.

30. Upon information and belief that the Defendant Nursing Director had posted the position solely to promote the consultant to the position of Nursing Manager, Ms. Iris D. Thomas actively recruited people to apply for the job.

31. Upon her return from the continuing education retreat, Ms. Iris D. Thomas speaks to the Defendant Nurse Manager about her position being listed as vacant and expresses concern about the Defendant Nurse Manager trying to replace her with the Consultant.

32. The Defendant Nursing Director ensures Ms. Iris D. Thomas that her position is not going to be replaced by a new hire and that a new permanent employee will be added to the staff to assist Ms. Iris D. Thomas with managing her four-person nursing staff.

33. The Defendant Nursing Director assures Ms. Thomas, that she will be able to participate in the hiring process as a Nurse Manager.

34. Upon receiving the applications for the Nurse Manager position, Human Resources, sorted the applications according to the procedural screening practices outlined by the Hospital. Qualified applications were to be identified by Human Resources and only the qualified applications were to be sent to management for possible interviews.

35. The consultant, Chris Recker's application did not qualify and her application was not forwarded to commence the interviewing process.

36. Ms. Williams from Human Resources contacted Ms. Iris D. Thomas and gave her the applications to review in her capacity as a Nurse Manager.

37. Applicants had approximately one week to apply for the position.

38. Upon receiving the applications to review, the Defendant Nurse Manager expresses shock at the number of applications Human Resources received for the position.

39. The Ms. Williams from Human Resources who contacted Ms. Iris D. Thomas and gave her the applications was reprimanded for giving Ms. Iris D. Thomas copies of the job applications to review.

40. Upon information and belief, the Defendant Nursing Director, upon discovering that the Consultant's application did not qualified for review, inquires about the Consultant's application and allows the Consultant to rewrite and resubmit her application so that the Consultant could interview for the position

41. Ms. Iris D. Thomas approaches the Defendant Nursing Director to ascertain whether she is going to be replaced by the consultant, Chris Recker.

42. Ms. Iris D. Thomas tells the Defendant Nursing Director that she knows that she is trying to replace her with the Consultant by creating a new position for the Consultant. Ms. Thomas reminds her that she will not be able to create the position for the Consultant in this manner because it is not consistent with the hospital's policy.

43. The Defendant Nursing Director informs Ms. Thomas that she is going to be blunt honest with her and that she can hire the Consultant if she wants because the opening is

4

not a union position and Mary Driscoll, on of the Defendant Nursing Director's superiors said that it was okay to hire the Consultant in this manner.

44. Ms. Iris D. Thomas responds by expressing concerns that the Ambulatory Unit does not need two Nurse Managers to manage four nurses.

45. Ms. Iris D. Thomas informs the Defendant Nursing Director that she wants to keep her job and if replaced by the Consultant she will report the Defendant Nursing Director for wrongfully terminating her position.

46. The Defendant Nursing Director interviews the Consultant, Recker. The Defendant Nursing Director does not inform Ms. Iris D. Thomas about scheduled interview in advance.

47. The Defendant Nursing Director informs Ms. Iris D. Thomas minutes before the interview and tells her that she can look over the Consultant's application and qualifications during the interview.

48. Ms. Iris D. Thomas does not get a fair chance to interview Recker because she did not have enough time prior to the interview to review her qualifications. Ms. Iris D. Thomas does not believe the Consultant's performance during the interview and informs the Defendant Nursing Director that she has far less qualifications than the other candidates that applied.

49. The Defendant Nursing Director has three separate conversations with Ms. Iris D. Thomas saying that she would like to hire the Consultant.

50. During all of these conversations the Defendant Nursing Director tries to persuade Ms. Iris Thomas of the Consultant's qualifications.

51. Ms. Iris D. Thomas maintains that the Consultant is the less qualified applicant, does not meet the qualifications for the job and that she will not recommend her for the position.

52. The Defendant Nursing Manager hires Recker, the Consultant to serve as a Nursing Manager in the Ambulatory Unit.

53. Ms. Iris D. Thomas informs the Defendant Nursing Director that the Consultant should not serve as her boss because the Consultant has less seniority and is not as qualified as she.

54. Upon information and belief, the Defendant Nursing Director recreates the hospital's organizational chart for the ambulatory Unit in response to Ms. Iris D. Thomas' objections to the consultant operating as her superior.

55. Upon information and belief the Defendant Nursing Director knew that recreating the hospital organizational chart was against hospital policy at the time she did so.

56. The Defendant Nursing Director creates two equivalent Nurse Manager positions, one for the Consultant and one for Ms. Iris D. Thomas.

57. After being hired, as a Nurse Manager, the Consultant begins to promote a hostile work environment and operated under demeaning racial stereotypes.

58. The Consultant refuses to interact with the African American staff forcing Ms. Iris D. Thomas to distribute the African American employees' checks and handle all correspondence with African American employees.

59. The Consultant gets to decide which assignments she would like to cover and delegates the tasks that she does not want to Plaintiff.

60. The Consultant gets her own office and a parking pass despite the fact that she is less senior than Ms. Iris D. Thomas. Ms. Thomas did not get her own office, or a parking pass when employed.

61. Ms. Iris D. Thomas did not receive her own office or parking pass until the consultant was hired as a Nurse Manager. She had to go to three people to request an office and parking pass, while the consultant was given these perquisites automatically.

62. The Consultant decides what tasks she is willing to perform at work and delegates the tasks that she does not want to do to Plaintiff. An outside employee is hired to help the Consultant, her responsibilities implementing rules for the computer system.

63. The Consultant would go for periods of time where she would not speak to Plaintiff or correspond.

64. The Consultant begins making rude comments, to Ms. Iris D. Thomas about the color of her skin, including one comment in front of The Defendant Nursing Director, on June 1, 2005 telling Ms. Thomas that she "didn't know that she could tan, but that she shouldn't get any darker."

65. Upon information and belief, the Defendant Nursing Director heard and saw the offensive behavior the Consultant engaged in but did not discipline or reprimand the consultant. Ms. Iris D. Thomas is physically and emotionally upset and leaves the room humiliated after hearing the Consultants comments.

66. Ms. Iris D. Thomas informs the Defendant Nursing Director that the Consultant is a difficult person to work with and feels uncomfortable about the Consultants comments about her race.

67. Plaintiff attempts to talk to the Defendant Nursing Director about the situation but is unable to establish rapport.

68. The Nursing Director tells her that she will address the issue promptly but that Ms. Thomas and the Consultant must learn to work together or one of them will be transferred out of the unit.

69. June 3, 2005, Plaintiff sends Fischer an e-mail asking her to address what is becoming a hostile work environment for her. Fischer does not respond.

70. June 21, 2005 meets with Joann Trapani, from the Cook County Commission on Human rights.

71. June 27, 2005, Plaintiff sends Fischer another e-mail asking for a response to her situation in an attempt to find a resolution to the hostile work environment.

72. June 29, 2005 both the Plaintiff and Recker meet with Trapani to open up a discussion between the two.

73. A third meeting was scheduled with Trapani to meet with Plaintiff, Recker, and Fischer. That meeting was consistently rescheduled and never took place.

74. July 20, 2005, Plaintiff sends an e-mail to Sydney Thomas, Director of Operations and the Nursing Director's superior. In the e-mail Plaintiff describes the hostile work environment, and the devastating impact that it is having on her physically and emotional health. Plaintiff gets no response.

75. July 22, 2005, Plaintiff sends an e-mail to the Director of Human resources regarding the same but no one responds.

76. On October 26, 2005, the Defendant Nursing Director informs Ms. Iris D. Thomas that someone will need to oversee the call center and that she would be assigned to this position.

77. Ms. Iris D. Thomas protests telling the Nursing Director that she does not want to work in the call center because it is not a Nursing Position, it would isolate her from other nurses, she would not be able to use her professional skill set, and she would like to keep her current position.

78. Upon information and belief, the call center did not need an Office Manager, and had not had an Office Manager in over 2 years prior.

79. Upon information and belief Ms. Iris D. Thomas was being transferred to the Call Center to downsize her position

7

80. Ms. Iris D. Thomas suggests that both she and the Consultant take turns overseeing the call center.

81. The consultant informs the Defendant Nursing Manager that she will quit if she has work in the call center, a unit of the hospital that is staffed primarily by blacks and Hispanics.

82. The Consultant is allowed to stay in the Ambulatory Unit.

83. Ms. Iris D. Thomas is transferred to the Call Center

84. The consultant is a less senior employee with only two years of experience in the Ambulatory Unit at this point. Plaintiff has seven years of experience.

85. Plaintiff sends both Fischer and Thomas an e-mail asking them to reconsider the decision to send her to the Call Center.

## COUNT I
### Retaliation for the Exercise of Rights Protected by Title VII [ 42 USC §§ 2000e

86. The Plaintiff IRIS D. THOMAS repeats and realleges the allegations set forth in Paragraphs 1-85 of Count I as and for Paragraphs 1-85 of General Allegations.

87. On or around November 2005 Plaintiff engaged in activity protected under Title VII, specifically filing a formal complaint with the Cook County Board of Commissioners, writing a letter to John Stroger informing him of the hostile work environment.

88. Stroger contacts plaintiff personally via telephone and reassures her that the decision is unfair, that she will not be transferred, and will not lose her job.

89. Stroger leaves office in 2006. Fischer immediately places Plaintiff in the call center permanently in November 2006.

90. Upon her transfer Ms. Thomas discovers that the Call Center Office Manager position will be eliminated due to budget cuts.

91. Ms. Thomas confronts Fischer about her job position being eliminated. Fischer tells her that her job will not be eliminated.

92. On or around January 2007, a meeting is held about the upcoming budget cuts and Plaintiff is reassured that those employees with less seniority will be laid off first pursuant to the hospital's policy.

93. On April 20, 2007 Ms. Thomas was discharged from employment with Defendant.

94. Ms. Thomas asks if she could "bump," another employee with less seniority in order to keep her job but is told that she cannot, after a white male with less seniority was able to "bump" another employee and keep his position.

95. Upon information and belief, the Defendant terminated Ms. Thomas' employment because of Plaintiff's involvement in activity protected under Title VII, filing a formal complaint with John Stroger, as shown by her immediate transfer to a different department where defendant knew that the position Plaintiff was being appointed to would be eliminated.

96. Defendant transferred Ms. Iris D. Thomas to a different unit, despite Plaintiff's protests, immediately after Ms. Thomas complained to the Cook County Board of commissioners about hostile work environment.

97. The position that Plaintiff was transferred to was subsequently eliminated and she was laid off in violation of company policy which states that employees with less seniority are to be discharged before those employees with more seniority.

98. Plaintiff had more seniority than 28 of the 29 nursing coordinators in her unit, including Recker who had only been employed for 3 years, was earning $70,000 and was not considered a qualified applicant at the time of hiring. Defendant's termination of Plaintiff in retaliation for Plaintiff's involvement in protected activity is an unlawful employment practice under 42 U.S.C.A. § 2000e-3(a).

99. As a result of Defendant's unlawful actions, Plaintiff has been deprived of all the benefits and privileges of employment in an amount to be established at trial. Plaintiff therefore is entitled to such affirmative relief as may be appropriate under 42 U.S.C.A. § 2000e-5(g).

**WHEREFORE**, Plaintiff prays for an order as follows:

1. For back pay and damages for Plaintiff's loss of the earnings and benefits of the employment relationship.

2. For the costs, including attorney's fees, of the trial of this claim and any appeal, and any other relief to which the Plaintiff is justly entitled including punitive damages.

## COUNT II
### Breach of Contract

100. The Plaintiff IRIS D. THOMAS repeats and realleges the allegations set forth in Paragraphs 1-85 of Count I as and for Paragraphs 1-85 of General Allegations.

101. Plaintiff has complied with all conditions precedent to jurisdiction under 28 U.S.C. § 1441(b). Specifically, Plaintiff has filed a federal claim arising from the same nucleus of operative facts.

9

102. On November 23, 1998 plaintiff and defendant entered into an employment contract of indefinite duration under which plaintiff agreed to work for approximately $75,000 per year.

103. Plaintiff complied with the terms of this contract by providing her services as a Nurse Manager in a satisfactory manner and receiving above average performance reviews. As Nurse Coordinator in the Ambulatory Unit, Plaintiff managed four nurses, was responsible for all clinical operations of the health center including but not limited to the budget, and actively worked to develop referral relationships with other medical service providers and social service agencies in the community served by the hospital.

104. At the time the parties entered the contract, Defendant orally assured Plaintiff he/she would have job security and that it was Defendant's policy to discharge employees only for just cause.

105. Defendant distributed copies of its Personnel Policy Manual to employees, including Plaintiff.

106. Defendant's Manual promised that employees would be discharged only for good cause, and only in accordance with discharge procedures set out in the Manual.

107. Plaintiff was aware of the Defendant's policies set out in the Manual, and continued to work for Defendant in reliance on Defendant's promises concerning job security. Upon being transferred to a different unit Plaintiff asked for the reassurance that she would not be terminated after seeing that her position was to be terminated.

108. Defendant created a new position for plaintiff knowing that the position would subsequently be terminated and transferred the plaintiff knowing that the plaintiff would be discharged.

109. Upon being transferred plaintiff was reassured that her position would not be terminated.

110. The position that Plaintiff was transferred to was subsequently eliminated and she was laid off in violation of company policy which states that employees with less seniority are to be discharged before those employees with more seniority.

111. On April 20, 2007 Plaintiff was laid off from employment with Defendant. Defendant failed to adhere to procedures in the Personnel Policy provides that layoffs are to be conducted in order of seniority. Employees with less seniority are to be laid off before their more senior counterparts.

112. As a result of Defendant's wrongful discharge of plaintiff in breach of the policy outlined and agreed upon by the defendant and its employees, Plaintiff has lost earnings, and has incurred expenses in the prosecution of this action.

**WHEREFORE**, Plaintiff prays for an order as follows:

1.  For back pay and damages for Plaintiff's loss of the earnings and benefits of the employment relationship.

2.  For the costs, including attorney's fees, of the trial of this claim and any appeal, and any other relief to which the Plaintiff is justly entitled including punitive damages.

## COUNT III
## Age Discrimination

113.  The Plaintiff IRIS D. THOMAS repeats and realleges the allegations set forth in Paragraphs 1-85 of Count I as and for Paragraphs 1-85 of General Allegations.

114.  The Plaintiff, Iris D. Thomas was an employee covered by the Age Discrimination in Employment Act pursuant to 29 U.S.C. § 623.

115.  Ms. Iris D. Thomas was at least 40 years of age during her period of employment with the Defendant.

116.  On November 23, 1998 Ms. Iris D. Thomas was hired by the Defendant and worked for the defendant for nine years.

117.  On April 20, 2007 Plaintiff was discharged from employment with Defendant

118.  Plaintiff met the applicable job qualifications and expectations by providing her services as a Nurse Manager in a satisfactory manner.

119.  Ms. Iris D. Thomas received above average performance reviews as Nurse Manager of the Ambulatory Unit.

120.  Plaintiff managed four nurses, was responsible for all clinical operations of the health center including but not limited to the budget, and actively worked to develop referral relationships with other medical service providers and social service agencies in the community served by the hospital.

121.  Younger employees in Ms. Iris D. Thomas' unit were treated more favorably than she.

122.  The younger Consultant, who was later promoted to Nurse Manager was treated more favorably than Ms. Iris D. Thomas.

123. The Consultant was allowed to decide which assignments she would like to cover and delegates the tasks that she does not want to Plaintiff.

124. The Consultant received her own office and a parking pass despite the fact that she is less senior than Ms. Iris D. Thomas. Ms. Thomas did not get her own office, or a parking pass when employed.

125. Ms. Iris D. Thomas was forced to change departments and work in the Call Center, while the Consultant was allowed to choose which department she wanted to work for.

126. Ms. Iris D. Thomas was replaced as Nurse Manager of Ambulatory by the consultant, Chris Recker, a younger employee.

127. Ms. Iris D. Thomas was laid off by the Defendant and the Defendant did not allow her to "bump" other employees with less seniority than her.

128. The Defendant failed to adhere to procedures in the Personnel Policy Manual which clearly states that layoffs are to be conducted in order of seniority. Employees with less seniority are to be laid off before their more senior counterparts.

129. The Consultant, a younger employee, with less seniority was not laid off by the Defendant.

130. As a result of Defendant's wrongful discharge of plaintiff in violation of the Age Discrimination in Employment Act Ms. Iris D. Thomas has lost earnings.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1 For back pay and damages for Plaintiff's loss of the earnings and benefits of the employment relationship.

2. For the costs, including attorney's fees, of the trial of this claim and any appeal, and any other relief to which the Plaintiff is justly entitled.

3. Such other relief as the court deems just and proper.

### COUNT IV
### Discrimination based on gender in violation of 42 USC §§ 2000e-et. seq.

131. The Plaintiff IRIS D. THOMAS repeats and realleges the allegations set forth in Paragraphs 1-85 of Count I as and for Paragraphs 1-85 of General Allegations.

132. Ms. Iris D. Thomas is a female.

12

133. On November 23, 1998 Ms. Iris D. Thomas was hired by the Defendant and worked for the defendant for nine years.

134. On April 20, 2007 Plaintiff was discharged from employment with Defendant

135. Plaintiff met the applicable job qualifications and expectations by providing her services as a Nurse Manager in a satisfactory manner.

136. Ms. Iris D. Thomas received above average performance reviews as Nurse Manager of the Ambulatory Unit.

137. Plaintiff managed four nurses, was responsible for all clinical operations of the health center including but not limited to the budget, and actively worked to develop referral relationships with other medical service providers and social service agencies in the community served by the hospital.

138. Upon information and belief, Male employees received favorable treatment from the Defendant.

139. Ms. Iris D. Thomas was laid off by the Defendant and the Defendant did not allow her to "bump" other employees with less seniority than her.

140. The Defendant failed to adhere to procedures in the Personnel Policy Manual which clearly states that layoffs are to be conducted in order of seniority. Employees with less seniority are to be laid off before their more senior counterparts.

141. A male employee was allowed to "bump" another employee with less seniority than him, allowing him to keep his job and avoid being laid off.

142. The Plaintiff was not allowed to exercise the same rights

143. As a result of Defendant's wrongful discharge of plaintiff in violation of the Plaintiff's rights Ms. Iris D. Thomas has lost earnings.

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows:

1. For back pay and damages for Plaintiff's loss of the earnings and benefits of the employment relationship.

2. For the costs, including attorney's fees, of the trial of this claim and any appeal, and any other relief to which the Plaintiff is justly entitled.

## COUNT V
## Discrimination based on race in violation of 42 USC §§ 2000e-et. seq.

144. The Plaintiff IRIS D. THOMAS repeats and realleges the allegations set forth in Paragraphs 1-85 of Count I as and for Paragraphs 1-85 of General Allegations.

145. Ms. Iris D. Thomas is an African American.

146. On November 23, 1998 Ms. Iris D. Thomas was hired by the Defendant and worked for the defendant for nine years.

147. Plaintiff met the applicable job qualifications and expectations by providing her services as a Nurse Manager in a satisfactory manner.

148. Ms. Iris D. Thomas received above average performance reviews as Nurse Manager of the Ambulatory Unit.

149. Plaintiff managed four nurses, was responsible for all clinical operations of the health center including but not limited to the budget, and actively worked to develop referral relationships with other medical service providers and social service agencies in the community served by the hospital.

150. On April 20, 2007 Plaintiff was discharged from employment by the Defendant.

151. Upon information and belief, Ms. Iris D. Thomas was treated unfairly by the Defendant and its agents because she is African American.

152. Upon information and belief, the Defendant has a history of discriminating against African American employees.

153. The Defendant suddenly suggested that Plaintiff's direct supervisor Shirley Bomar-Cole, an African American woman find a new job.

154. The defendant replaced Bomar-Cole with Barbara Fischer, a less experienced Caucasian woman.

155. Ms. Iris D. Thomas' position as Nursing Director was listed vacant.

156. Ms. Iris D. Thomas discovered that her job has been posted as vacant after co-workers approached her and asked her if she was retiring.

157. Ms. Iris D. Thomas' boss and the Consultant are out of town on a continuing education retreat when she discovers her position is posted as vacant.

158. As a nurse manager Ms. Iris D. Thomas was excluded from the continuing education retreat without any explanation.

159.  Upon information and belief Ms. Iris D. Thomas's position was listed so that her position could be filled by the Consultant, a less experienced white woman.

160.  The Consultant, Chris Recker applied for the Nurse Manager position.

161.  The Consultant's application did not qualify for the position and her application was not forwarded to commence the interviewing process.

162.  The Consultant is still hired for the Nurse Manager position.

163.  Upon information and belief, the Defendant Nursing Director recreates the hospital's organizational chart for the ambulatory Unit in response to Ms. Iris D. Thomas' objections to the Consultant operating as her superior.

164.  Upon information and belief the Defendant Nursing Director knew that recreating the hospital organizational chart was against hospital policy at the time she did so.

165.  The Defendant Nursing Director creates two equivalent Nurse Manager positions, one for the Consultant and one for Ms. Iris D. Thomas by recreating the organizational chart.

166.  Upon information and belief, by recreating the organizational chart the Defendant Nursing Director reduced the responsibility and authority that Ms. Iris D. Thomas as a Nurse Manager.

167.  The Consultant refused to interact with the African American staff forcing Ms. Iris D. Thomas to distribute the African American employees' checks and handle all correspondence with African American employees.

168.  The Consultant was allowed to decide which assignments she would like to cover and delegated the unfavorable tasks that she did not want to Plaintiff.

169.  The Consultant received her own office and a parking pass despite the fact that she is less senior than Ms. Iris D. Thomas. Ms. Thomas did not get her own office, or a parking pass when employed.

170.  Ms. Iris D. Thomas did not receive her own office or parking pass until the consultant was hired as a Nurse Manager. She had to go to three people to request an office and parking pass, while the consultant was given these perquisites automatically.

171.  An outside employee is hired to assist the Consultant, while an additional and disparate amount of responsibilities were being delegated to Ms. Iris D. Thomas

172.  The Consultant would go for periods of time where she would not speak to Plaintiff or correspond.

173. The Consultant made rude comments, to Ms. Iris D. Thomas about the color of her skin

174. Specifically the Consultant made one comment in front of The Defendant Nursing Director, on June 1, 2005 telling Ms. Thomas that she didn't know that she could tan, but that she shouldn't get any darker.

175. Upon information and belief, the Defendant Nursing Director heard and saw the offensive behavior the Consultant engaged in but did not discipline or reprimand the consultant. Ms. Iris D. Thomas is physically and emotionally upset and leaves the room humiliated after hearing the Consultants comments.

176. Ms. Iris D. Thomas informed the Defendant Nursing Director that the Consultant is a difficult person to work with and feels uncomfortable about the Consultants comments about her race.

177. Plaintiff attempts to talk to the Defendant Nursing Director about the situation but is unable to establish rapport.

178. The Nursing Director tells her that she will address the issue promptly but that Ms. Thomas and the Consultant must learn to work together or one of them will be transferred out of the unit.

179. The Defendant Nursing Director never addressed Ms. Iris D. Thomas correspondence or requests for help with the hostile work environment.

180. On October 26, 2005, the Defendant Nursing Director informs Ms. Iris D. Thomas that someone will need to oversee the call center and that she would be assigned to this position.

181. Ms. Iris D. Thomas protests telling the Nursing Director that she does not want to work in the call center because it is not a Nursing Position, it would isolate her from other nurses, she would not be able to use her professional skill set, and she would like to keep her current position.

182. Upon information and belief, the call center does not need an Office Manager, has not had an Office Manager in over 2 years.

183. Upon information and belief Ms. Iris D. Thomas was being transferred to the Call Center to downsize her position.

184. Ms. Iris D. Thomas suggested that both she and the Consultant take turns overseeing the call center.

185. The request is denied and the Consultant is allowed to stay in the Ambulatory Unit full time.

186. Ms. Iris D. Thomas was transferred t the less desirable position in the Call Center.

187. The consultant is a less senior employee with only two years of experience in the Ambulatory Unit at this point. Plaintiff has seven years of experience.

188. Upon information and belief Ms. Iris D. Thomas was retaliated against by the defendant after complaining about the disparaging comments about her race, by transferring her to the Call Center.

189. Upon information and belief, the Plaintiff, Ms. Iris D. Thomas, was transferred to the call center by the Defendant in order to discharge her.

190. Upon information and belief, the Defendant knew that the position that Ms. Iris D. Thomas was transferred to in the Call Center would be eliminated during budget cuts.

191. After filing a formal complaint about the hostile work environment Ms. Iris D. Thomas was discharged.

192. Ms. Iris D. Thomas asked permission to "bump" a less senior employee in order to keep her job.

193. Ms. Iris D. Thomas is not allowed to "bump" a less senior employee and is subsequently laid off.

194. During this time another white male employee was allowed to "bump" a less senior employee and keep his job.

195. The Defendant failed to adhere to procedures in the Personnel Policy Manual which clearly states that layoffs are to be conducted in order of seniority. Employees with less seniority are to be laid off before their more senior counterparts.

196. As a result of Defendant's wrongful discharge of plaintiff in violation of the Age Discrimination in Employment Act Ms. Iris D. Thomas has lost earnings.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1. For back pay and damages for Plaintiff's loss of the earnings and benefits of the employment relationship.

2. For the costs, including attorney's fees, of the trial of this claim and any appeal, and any other relief to which the Plaintiff is justly entitled.

Respectfully Submitted,

/s/ Yao O. Dinizulu
One of the attorneys for the Plaintiff

Yao O. Dinizulu
Dinizulu Law Group, Ltd
203 N. LaSalle St. Suite 2100
Chicago, IL 60601
(312) 782-4117

18